United States Bankruptcy Court
Southern District of Texas
**ENTERED**
October 20, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | **CASE NO: 16-34941** |
| GUSTAVO GILES-FLORES, | § § | **CHAPTER 13** |
| Debtor. | § § | |
| GUSTAVO GILES-FLORES, | § § | |
| Plaintiff, | § § | |
| VS. | § § | **ADVERSARY NO. 21-4406** |
| BRAEBURN PLAZA, INC., | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION

Gustavo Giles-Flores alleges that Braeburn Plaza, Inc. violated the automatic stay by foreclosing on his home. Mr. Giles-Flores exempted his home under the Texas homestead exemption. Braeburn moved to dismiss this adversary proceeding because the home was not property of the bankruptcy estate at the time of foreclosure. Because the home was "arguably" estate property, Braeburn should have obtained relief from the stay before foreclosure. *See Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 304 (5th Cir. 2005). The motion to dismiss is denied.

### BACKGROUND

Mr. Giles-Flores purchased his home on April 24, 2015. (ECF No. 1 at 1). That home is subject to fees imposed by the Braeburn Plaza, Inc. Homeowners' Association. (ECF No. 1 at 2). On October 3, 2016, Mr. Giles-Flores filed a chapter 13 bankruptcy petition. (Case No. 16-34941, ECF No. 1). He did not include any payments to Braeburn in his original schedules. (Case No. 16-34941, ECF No. 13).

On October 3, 2016, Mr. Giles-Flores filed a plan providing for the total debt claim on the home. (Case No. 16-34941, ECF No. 2 at 3). The plan also provides that "[t]he Debtor(s) will be granted a discharge in accordance with § 1328. Property of the estate shall vest in the Debtor(s) upon entry of the discharge order." (Case No. 16-34941, ECF No. 2 at 8).

On October 17, 2016, Mr. Giles-Flores exempted his homestead pursuant to Texas Property Code § 41.001 as made applicable by 11 U.S.C. § 522(b)(3). (Case No. 16-34941, ECF No. 13 at 10). None of Mr. Giles-Flores' creditors objected. (ECF No. 11 at 12; Case No. 16-34941, ECF No. 26). If no timely objections are filed, a claimed exemption is allowed 30 days after the later of (i) the conclusion of the § 341 creditors' meeting; or (ii) the date that the exemption was claimed. *See* FED. R. BANKR. P. 4003(b)(1). The meeting of creditors concluded on November 18, 2016. (Case No. 16-34941, ECF No. 26). 30 days later, on December 18, 2016, the exemption was allowed. Mr. Giles-Flores amended his plan on December 12, 2016, and the Court confirmed the amended plan on December 15, 2016. (Case No. 16-34941, ECF Nos. 31; 36).

Mr. Giles Flores was required to pay, but did not pay, homeowners' fees arising after he filed his bankruptcy petition. On December 3, 2019, Braeburn's attorney wrote to Mr. Giles-Flores demanding $2,841.54 within 30 days for post-petition homeowners' association dues. (ECF No. 1 at 24–25). Braeburn then filed the foreclosure lawsuit in Harris County District Court on February 20, 2020. (ECF No. 1 at 13). The Harris County District Court permitted Braeburn to foreclose on September 27, 2021. (ECF No. 1 at 14). Braeburn appointed Carl Quezada as Trustee to foreclose on the home. (ECF No. 1 at 72–73). Mr. Quezada recorded a notice of his sale of the home on October 6, 2021. (ECF No. 1 at 75). Mr. Giles-Flores' attorney warned Braeburn's attorney of Mr. Giles-Flores' bankruptcy proceedings shortly thereafter. (ECF No. 1 at 78).

Mr. Giles-Flores filed an amended modification of his plan on October 14, 2021 proposing to add the post-petition homeowners' association assessments. (Case No. 16-34941, ECF No. 85 at 1, 4, 17). Nonetheless, on November 2, 2021, Mr. Quezada foreclosed on the home and sold it to a third party. (ECF No. 1 at 16). Braeburn's attorney informed Mr. Giles-Flores of the sale a week later. (ECF No. 1 at 16–17).

Mr. Giles-Flores filed this adversary proceeding on November 22, 2021. (ECF No. 1). He maintains that the home was property of the bankruptcy estate at the time of the foreclosure. (ECF No. 1 at 17). The complaint alleges that Braeburn willfully violated the automatic stay by foreclosing on and selling the home. (ECF No. 1 at 18). In its motion to dismiss filed on November 30, 2021, Braeburn argues that the home was not estate property at the time of the foreclosure. (ECF No. 6 at 2). The Court heard oral argument on January 6, 2022 and took the matter under advisement following supplemental briefing.

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District consistent with 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Federal Rule of Bankruptcy Procedure 7012 incorporates Federal Rule of Civil Procedure 12(b) in adversary proceedings. FED. R. BANKR. P. 7012.

In evaluating a complaint under Rule 12(b)(6), a court must examine whether the pleading "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). "Although a district court must assume the veracity of well-pleaded facts, a complaint that fail[s] to show more than mere conclusory allegations is properly met with dismissal for failure to state a claim." *Smith v. Dep't of Health & Hosps. La.*, 581 F. App'x 319, 321 (5th Cir. 2014) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th. Cir. 2010) (internal quotation marks omitted)). Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Turner v. AmericaHomeKey Inc.*, 514 F. App'x 513, 516 (5th Cir. 2013) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).

## DISCUSSION

Braeburn moved to dismiss this adversary proceeding because (i) the foreclosure did not violate the automatic stay when the estate had no interest in Mr. Giles-Flores' home; (ii) if Braeburn violated the automatic stay, it was not willful; and (iii) Mr. Giles-Flores was not injured. (ECF No. 6 at 6). Bankruptcy courts in this Circuit disagree whether the estate retains legal title to property exempted under an "in-kind" exemption statute. Given the chronology of events, the Court need not weigh in. Because the home was arguably estate property on the foreclosure date, the automatic stay applied. *See Chesnut*, 422 F.3d at 304. Because Braeburn had knowledge of the bankruptcy, Braeburn should have petitioned this Court before proceeding with the foreclosure. Braeburn's actions were willful, and Mr. Giles-Flores plausibly alleges injury.

**I.   BRAEBURN SHOULD HAVE PETITIONED THE COURT BEFORE FORECLOSING**

The commencement of Mr. Giles-Flores' bankruptcy created a bankruptcy estate. The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the

commencement of the case." 11 U.S.C. § 541(a)(1). Debtors may exempt certain property from the estate. 11 U.S.C. § 522(b). "An exemption is an interest withdrawn from the estate . . . for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991); *Schwab v. Reilly*, 560 U.S. 770, 785 (2010) ("[E]xemptions represent the debtor's attempt to reclaim those assets, or more often, certain interests in those assets, to the creditors' detriment."). The parties agree that Mr. Giles-Flores properly exempted his home under the Texas homestead statute.

Exemptions may be categorized as either "in-kind" or an exemption of an interest in property. *In re Luckham*, 464 B.R. 67, 72 (Bankr. D. Mass. 2012). In-kind exemptions allow a debtor to "exempt certain property . . . in full regardless of value." *Schwab*, 560 U.S. at 784; *see, e.g.*, 11 U.S.C. §§ 522(d)(9) (professionally prescribed health aids), 522(d)(10)(C) (disability benefits), 522(d)(7) (unmatured life insurance contracts). Relevant to this matter is whether both beneficial and legal title[1] left the bankruptcy estate when Mr. Giles-Flores exempted his home under the Texas homestead exemption. Under § 541 of the Bankruptcy Code, the estate was initially vested with both legal and equitable title to the home as of the commencement of the case.

### A.    Texas Homestead Exemption

Under § 522(b)(2), a debtor must choose between federal and state homestead exemptions under § 522(d). *NCNB Tex. Nat'l Bank v. Volpe (In re Volpe)*, 943 F.2d 1451, 1452 (5th Cir. 1991). Section 522(d)(1) provides the federal homestead exemption: as of April 1, 2022, a debtor may exempt "[t]he debtor's aggregate interest, not to exceed $27,900 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . . ."

---

[1] Legal title is "a title that evidences apparent ownership." *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.-San Antonio 2009, *pet. denied*). Equitable title is "a title that indicates a beneficial interest in property." *Id.*

Alternatively, Texas Property Code § 41.001 provides that "[a] homestead . . . [is] exempt from seizure for the claims of creditors . . . ."

The Texas homestead exemption exempts the home itself, not the debtor's interest in the home. *See Hawk v. Engelhart (In re Hawk)*, 871 F.3d 287, 294 (5th Cir. 2017) ("[T]he land itself—not its monetary value—[was] protected under Texas law and 'exempted under [§ 522].'" (citing *Viegelahn v. Frost (In re Frost)*, 744 F.3d 384, 391 (5th Cir. 2014))); *In re Parsons*, 530 B.R. 411, 417 (Bankr. W.D. Tex. 2014) ("There is no dollar limit to the exemption because it is the homestead itself, rather than the debtor's equity, that Texas law protects."); *In re Moore*, 442 B.R. 865, 867 (Bankr. N.D. Tex. 2010) ("[T]he Texas exemption statutes refer not to interests in property but rather to the property itself . . . .").

Mr. Giles-Flores exempted his home under the Texas homestead statute. Although Mr. Giles-Flores exempted the home itself, the question remains whether Mr. Giles-Flores obtained legal title to the home or whether legal title remained in the bankruptcy estate. Some bankruptcy courts in the Fifth Circuit have held that legal title exits the estate:

> As the Texas [personal property exemption] statute refers to property rather than an interest in property, it can be argued that the *Schwab* analysis is not applicable. If *Schwab* is not applicable, then assuming an exemption claim is made and not timely objected to, the property in kind then passes to the debtor. The issue of whether title passes appears resolved in the debtor's favor given the exemption claim is to property and not to a component part of "property."

*In re Salazar*, 449 B.R. 890, 901 (Bankr. N.D. Tex. 2011) (internal citation omitted); *see In re Zamora*, No. BR 11-52138C, 2012 WL 4501680, at *2 (Bankr. W.D. Tex. Sept. 28, 2012) ("[T]he [homeowner's] Association does not need relief from the automatic stay to pursue a state lawsuit to collect post-petition assessments, prosecute that suit to judgment and to enforce that judgment against property that is not property of the estate (such as exempt property).").

Other bankruptcy courts in the Fifth Circuit disagree: "Frost's exempted homestead, while proper, remained property of the estate until the exempted homestead fully vested back in Frost upon discharge." *Romo v. Montemayor (In re Montemayor)*, 547 B.R. 684, 708 (Bankr. S.D. Tex. 2016) (discussing *Frost*, 744 F.3d 384, in which a chapter 13 debtor (i) exempted his home under the Texas homestead statute; (ii) subsequently sold the home post-petition but pre-discharge; and (iii) failed to reinvest the proceeds into a new homestead within six months as required by Texas law.); *id.* at 710 ("[T]he homestead never truly left the chapter 13 estate, because it was exempt but would not vest in the debtor until the resolution of either an order granting plan confirmation *or*, as provided for by the Western District of Texas' chapter 13 plan, as a modification of § 1327(b), completion of all plan payments under the plan and the entry of an order of discharge."); *id.* at 712 ("In this Court's opinion, the more persuasive argument is that Frost's distributed proceeds were exempted, but, pursuant to the chapter 13 plan, remained *property of the estate,* having not fully revested in the debtor, until the point at which the temporal exemption expired."); *see also In re Garcia*, 499 B.R. 506, 514 (Bankr. N.D. Tex. 2013), *aff'd sub nom. Garcia v. Bassel*, 507 B.R. 907 (N.D. Tex. 2014) ("[O]ne must conclude that exempt property is not withdrawn from the estate, but remains property of the estate insulated from the claims of creditors for as long as the asset enjoys exempt status under state law."). Courts in this circuit do not agree what happens to legal title to property exempted under the Texas homestead statute when, as here, the debtor's plan overrides 11 U.S.C. § 1327(b) and provides for the vesting of estate property at discharge.[2] (Case No. 16-34941, ECF No. 31 at 8).

---

[2] The issue is even more complex in this case. The exemptions were allowed after both the date that the proposed plan was filed and the date on which it was confirmed. Does the vesting provision of the plan—"[p]roperty of the estate shall vest in the Debtor(s) upon entry of the discharge order"—apply to property as of the petition date, property as of the date the plan was proposed, property as of the date that the plan was confirmed, or property that remained in the estate on the date of entry of the discharge? The Court is unable to locate definitive authority on this question.

### B. Arguable Property of the Estate

It is axiomatic that the automatic stay applies to property that is property of the estate. In this Circuit, the automatic stay also applies to property "to which the debtor has only an arguable claim of right . . . ." *Chesnut*, 422 F.3d at 300.

Braeburn was required to obtain leave from this Court before seizing arguable property of the estate. *See id.* at 304 ("[B]ankruptcy law demands some process prior to the seizure of arguable property . . . ."). Arguable property of the estate is "an asset to which the debtor has only an arguable claim of right." *Id.* at 300. In *Chesnut*, a creditor foreclosed on property that the debtor claimed was community property under the protection of the automatic stay. *Id.* at 300–301. The Fifth Circuit found that the classification of the property as separate or community property was a non-frivolous dispute at the time of the creditor's foreclosure: "The . . . property was not clearly part of [the] bankruptcy estate at the time of the foreclosure, but neither was it clearly *not* part of [the] estate." *Id.* at 303. A creditor may not defend a foreclosure by claiming that the stay did not apply "[w]here seized property is arguable property." *Id.* at 304.

A discharge violation may be contemptible if there is "no fair ground of doubt as to whether the [discharge] order barred the creditor's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1799 (2019). Stated differently, "civil contempt [for violating a discharge order] may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful."

---

One can reasonably argue that a plan has retroactive effect. The payments proposed in a plan must commence 30 days after the petition date. 11 U.S.C. § 1326(a)(1). The Trustee retains the payments pending confirmation, and then applies the payments "in accordance with the plan." 11 U.S.C. § 1326(a)(2). The plan provides for distributions commencing on a date prior to the plan's approval by the Court. (Case No. 16-34941, ECF No. 2 at 1). If the plan is given retroactive effect, then the vesting provision would leave legal title with the Debtor. The vesting provision, even if in tension with the statute, would control. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010) (holding that a confirmed plan will not be overturned for legal error when a party has notice of the error and does not object or timely appeal).

*Id.* The Supreme Court distinguished this discharge violation standard with that of a violation of the automatic stay:

> Taggart also notes that lower courts often have used a standard akin to strict liability to remedy violations of automatic stays. An automatic stay is entered at the outset of a bankruptcy proceeding. The statutory provision that addresses the remedies for violations of automatic stays says that "an individual injured by any willful violation" of an automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). This language, however, differs from the more general language in section 105(a). The purposes of automatic stays and discharge orders also differ: A stay aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run, whereas a discharge is entered at the end of the case and seeks to bind creditors over a much longer period. These differences in language and purpose sufficiently undermine Taggart's proposal [for creditors to seek advance determinations before arguable discharge violations] to warrant its rejection.

*Id.* at 1803–04 (citations omitted). *Taggart* determines the legal standard for holding a creditor in civil contempt for a discharge violation. *Id.* at 1801. Because the question before the Court is whether to dismiss Mr. Giles-Flores' stay violation claim, *Taggart* is relevant, but not directly on point.

This Court is bound by Fifth Circuit precedent. *See Lopez v. City of Hous.*, No. CIV. A. H-09-0420, 2009 WL 1456487, at *15 (S.D. Tex. May 22, 2009), *aff'd*, 617 F.3d 336 (5th Cir. 2010) ("[A] federal district court must generally apply an interpretation of law articulated by its circuit court of appeals."). Fifth Circuit precedent is binding "absent an intervening change in law, such as by a statutory amendment, or the Supreme Court, or [the] en banc court." *Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 591 (5th Cir. 2017) (quoting *Sprong v. Fidelity Nat'l Property & Cas. Ins. Co.*, 787 F.3d 296, 305 (5th Cir. 2015)). "For a Supreme Court decision to override a Fifth Circuit case, the decision must unequivocally overrule prior precedent; mere illumination of a case is insufficient." *Gahagan v. U.S. Citizenship & Immigration Services*, 911 F.3d 298, 302 (5th Cir. 2018) (quoting *United States v. Petras*, 879 F.3d 155, 164 (5th Cir. 2018)).

Where *Taggart* discusses stay violations, the Supreme Court identifies the differences between the automatic stay and a discharge injunction. *Id.* at 1803–04. *Taggart* does not "unequivocally overrule" *Chesnut*, and this Court is bound by Fifth Circuit precedent.[3]

As set forth above, substantial authority supports Mr. Giles-Flores' claim that legal title remained property of the estate. Just as in *Chesnut*, it is not clear that legal title to the home is estate property, but it is also not clear that legal title to the home is *not* estate property. This question can "only be answered with finality through the judicial process . . . ." *Chesnut*, 422 F.3d at 303. Braeburn may not now defend its failure to petition the Court by claiming that the stay did not apply to arguable property. Had Braeburn petitioned the Court before foreclosing, the Court would likely need to decide the main question the parties dispute: Did Mr. Giles-Flores obtain legal title when he exempted the home under the Texas homestead exemption? Because Braeburn proceeded against arguable estate property, the Court was not presented with the opportunity to answer that question. Braeburn foreclosed on arguable estate property without coming to the Court first. It violated the automatic stay.

## II.   BRAEBURN'S ACTIONS WERE WILLFUL

Braeburn argues that it did not believe that the automatic stay applied when it foreclosed on Mr. Giles-Flores' home. (ECF No. 6 at 5). A willful violation of the automatic stay requires knowledge of the stay and an intentional act, not an intent to violate the automatic stay. *Id.* at 302 (citing *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 482 (9th Cir. 1989)). "Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' . . . ." *Id.*

---

[3] The Court makes no findings regarding *Taggart*'s applicability to stay violations of a corporate debtor.

Braeburn knew of Mr. Giles-Flores' pending bankruptcy as early as December 21, 2020 when Mr. Giles-Flores filed a *pro se* response to Braeburn's Motion for Entry of Default in Harris County District Court. (ECF No. 1 at 13). Mr. Giles-Flores also alleges that he informed Braeburn of his bankruptcy again in the September 27, 2021 hearing in Harris County District Court. (ECF No. 1 at 13). Between October 8 and October 12, 2021, Mr. Giles-Flores' attorney and Braeburn's attorney exchanged emails in which Mr. Giles-Flores' attorney reaffirmed the pendency of Mr. Giles-Flores' bankruptcy and her position that the foreclosure could not proceed without lifting the stay. (ECF No. 1 at 14–16). Despite knowledge of the bankruptcy, Braeburn intentionally foreclosed on November 2, 2021 without petitioning this Court. (ECF No. 1 at 16).

### III. MR. GILES-FLORES PLAUSIBLY ALLEGES INJURY

Braeburn argues that because it rescinded the foreclosure and would support Mr. Giles-Flores' proposed plan modification to cure the post-petition homeowners' association dues within the plan, Mr. Giles-Flores is not injured. (ECF No. 6 at 6). Mr. Giles-Flores alleges that he "suffered frustration, anxiety and mental anguish or distress that is more than fleeting and inconsequential." (ECF No. 1 at 17). Additionally, he allegedly suffers from:

> [H]eadaches; loss of sleep; anxiety; shock of conscience; impaired enjoyment of life; a sense of dread; a sense of failure; a lack or diminution of self-worth; a significant amount of stress; the feeling of harassment or fright; marked irritability; distraction; low self-esteem; fear of loss of his homestead; and/or sense of embarrassment and discomfort that is greater than the general level of embarrassment and discomfort felt in filing bankruptcy or for the inability to pay a debt or bill.

(ECF No. 1 at 17). His unproven allegations are not so unreasonable that they should not be assumed as true for the purposes of deciding a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (holding that at the motion to dismiss stage, the Court will deny the motion if the plaintiff states "a claim that is plausible on its face." (quoting *Twombly*, 550 U.S. at 570)). When Braeburn

foreclosed on Mr. Giles-Flores' home and sold it to a third-party, Mr. Giles-Flores lost ownership of his home. Even if recission of the foreclosure means that Mr. Giles-Flores again owns his home, he may reasonably have believed that he has lost ownership for some period of time. It is plausible that Braeburn injured Mr. Giles-Flores by foreclosing in violation of the automatic stay. Whether this is provable awaits trial.

The motion to dismiss is denied.

## CONCLUSION

A separate order will be entered.

SIGNED 10/20/2022

_____
Marvin Isgur
United States Bankruptcy Judge